**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| **PAT TOVEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Cause No. 2:14-cv-242-WTL-MJD** |
| | ) | |
| **STADLER & CO., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS AND**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

This cause is before the Court on the Defendant's motion to dismiss (Dkt. No. 23) and the

Plaintiff's motion for leave to file an amended complaint (Dkt. No. 42). The Plaintiff's motion is

fully briefed, and the Court, being duly advised, **GRANTS** the motion for leave to file an

amended complaint, for the reasons set forth below. In light of this ruling, the Court construes

the Defendant's motion to dismiss as against Plaintiff's amended complaint. That motion is also

fully briefed, and the Court, being duly advised, **DENIES** the motion to dismiss, for the reasons

set forth below.

## I. MOTION TO AMEND

The Plaintiff, Pat Tovey, moves the Court for leave to file an amended complaint to add

Andrew Stadler ("Andrew"), the Chief Executive Officer and President of Defendant Stadler &

Co., Inc. ("Stadler"), as a defendant in this case. According to Tovey, Andrew "personally

directed and participated in the acts which constitute the basis of [P]laintiff's claims for the tort

of defamation and trade disparagement under the Lanham Act." Tovey's Mot. at ¶ 2. Thus,

Tovey argues that Andrew is personally liable to him. In response, Stadler argues that

the issue . . . is whether Andrew Stadler, when he "directed and participated" in the production of the television commercials at issue, was acting within the scope of his employment as the president and CEO of Stadler & Co. If he was, he cannot be individually liable for the claims raised by Plaintiff. If he was not, and exceeded the scope of his authority, then Stadler cannot be held vicariously liable for the individual torts of Andrew Stadler that were beyond the scope of his duties and president and CEO. . . . Plaintiff cannot have it both ways.

Stadler's Resp. at 3-4.

It is much too early to determine whether Andrew is personally liable to Tovey. Thus, Stadler's arguments are premature and not appropriate at this stage.

The case management plan provided that all motions for leave to amend pleadings and/or join additional parties were to be filed on or before December 19, 2014. Dkt. No. 18 at 3. Tovey met this deadline. Finding no other justification for denying Tovey's motion, such as undue delay, bad faith, unfair surprise, or prejudice, the Court **GRANTS** Tovey's motion to amend. **The Clerk is instructed to docket Tovey's amended complaint (found at Dkt. No. 42-1) as of the date of this Entry.**

## II.   MOTION TO DISMISS

### A.  Standard

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate Athletic Ass'n,* 638 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (omission in original). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 638 F.3d at 334 (citations omitted). A complaint's factual

allegations are plausible if they "raise the right to relief above the speculative level." *Bell*

*Atlantic Corp v. Twombly*, 550 U.S. 544, 556 (2007).

## B. Plaintiff's Allegations

Tovey is employed full-time as a tax preparer for Wabash Tax Service, Inc. ("Wabash")

in Terre Haute, Indiana. Tovey has worked as a tax preparer for Wabash for approximately

twenty years. For the past ten years, Tovey has used the nickname "Pat the Tax Man" in his tax

preparation business.

Stadler also provides tax preparation services to customers in Terre Haute. Stadler and its

employees are direct competitors of Wabash and Tovey.

Beginning in January 2014, and continuing through April 2014, Stadler ran the following

commercial on the Time Warner Cable systems in and around Terre Haute:

(Commercial opens with a man holding a pipe and looking at a sink.)

**Man**: (screams as water is spayed in his face from broken plumbing)

**Actor portraying "Pat the Tax Man"**: Wow, this is going to cost a lot of money
to repair. But the good news is you can use your tax return money you got last
week.

**Man**: How do you know about my tax refund?

**Actor portraying "Pat the Tax Man"**: Because it's me, Pat the Tax Man. (Actor
portraying Pat opens up his shirt to show t-shirt with the words "Pat the Tax Man"
taped onto it.) I did your taxes last week for what half the other guy charges. But if
the IRS calls, don't give 'em my name.

**Narrator**: Don't trust your taxes to someone like Pat. (The word "Pat" is shown in
large letters on the screen with a red circle and slash through the name.) Call Stadler
& Company – America's elite tax experts. Call the real licensed tax professionals.
Stadler, the tax pros. (song)

Compl. at ¶ 7.

Also beginning in January 2014, and continuing through April 2014, Stadler ran a second "Pat the Tax Man" commercial:

> (Commercial opens with a young woman laying on her stomach on a massage table covered by a sheet. The male actor playing Pat is massaging her bare shoulders.)
>
> **Actor portraying "Pat the Tax Man"**: So I see you are treating yourself to a massage with all that money you got back last week on your taxes.
>
> **Woman**: Oh Yeah, (Close-up of woman's face) Wait a minute, how do you know about my refund?
>
> **Actor portraying "Pat the Tax Man"**: Because it's me, Pat the Tax Man. (Actor portraying Pat opens up his shirt to show t-shirt with the words "Pat the Tax Man" taped onto it.) I did your taxes last week, remember? For half of what the other guy charged. But don't call me if the . . . uh, IRS calls.
>
> **Narrator**: Don't let just anybody touch your taxes. Call Stadler & Company – America's elite tax experts. We are trained professionals and licensed to serve your tax needs.

Compl. at ¶ 7. The actor in the commercials also bore a striking resemblance to Tovey.

After the commercials aired, Tovey filed suit against Stadler in Vigo County Superior Court alleging defamation *per se* and trade disparagement under the Lanham Act, 15 U.S.C. § 1125(a). The matter was removed to this Court on August 8, 2014.

## C. Discussion

Stadler argues that both of Tovey's claims should be dismissed "[b]ecause [as a matter of law,] the commercials are so exaggerated in their nature, they are considered parody and, therefore, not actionable." Stadler's Br. at 2. Stadler's specific arguments are discussed in more detail below.

### 1. Defamation

The difference between defamation and parody was discussed at length by the Indiana Court of Appeals in *Hamilton v. Prewett*, 860 N.E.2d 1234 (Ind. Ct. App. 2007). In that case,

Paul Hamilton was the owner and operator of Hamilton Water Conditioning. At some point,

Morgan Prewett, developed a website entitled "Paul Hamilten—The World's Smartest Man."

The website appeared to be authored by Hamilton and "portrayed [him] as a manipulative

individual both personally and professionally." *Id.* at 1238.[1] After Hamilton discovered the

website, he filed suit against Prewett alleging defamation and intentional infliction of emotional

distress. In response, Prewett argued, among other things, that the website "was a form of

comedy, parody, or satire," and thus not actionable. *Id.* Citing the Supreme Court case *Hustler v.*

*Falwell*, 485 U.S. 46 (1988) and an *American Jurisprudence* article on libel and slander, the

court reasoned as follows:

> The United States Supreme Court provided guidance on parody when it declined to impose liability on a magazine that portrayed a parodistic depiction of Jerry Falwell, a popular evangelist, losing his virginity to his mother in an outhouse. *Hustler v. Falwell*, 485 U.S. 46, 108 S. Ct. 876, 99 L.Ed.2d 41 (1988). The Court noted that the parody "could not reasonably be understood as describing actual facts about respondent or action events in which he participated" and that the trial court properly dismissed Falwell's defamation claim. *Id.* at 57, 108 S.Ct. 876. . . .
>
> Regarding the relationship between defamation and parody, *American Jurisprudence* provides:
>
> > Defamation is, by its nature, mutually exclusive of parody. By definition, defamation requires a false statement of fact; parody, to the degree that it is perceived as parody by its intended audience, conveys the message that it is not the original and, therefore, cannot constitute a false statement of fact.... If a parody could be actionable because, while recognizable as a joke, it

---

[1] For example, the website stated:

> I am a very intelligent, older American male and have my own very successful business dealing with the water conditioning field. I have a Master's Degree in Water Conditioning from Smartass University, a prestigious mail order college. While I am somewhat attractive, I am known for my ability to seduce women with my quick wit. I have several methods of attracting women as well as socializing skills, which are in the book I am writing . . .

*Id.* at 1238-39.

> conveyed an unfavorable impression, very few journalistic parodies could survive. It is not for the court to evaluate a parody as to whether it went too far, for purposes of a libel claim; as long as it is recognizable to the average reader as a joke, it must be protected or parody must cease to exist.
>
> 50 Am. Jur. 2d Libel and Slander § 156 (2006).

*Hamilton*, 860 N.E.2d at 1244. The Court of Appeals ultimately concluded that Prewett's website was non-actionable parody.

Based on the foregoing case law, Stadler argues that "the commercials . . . cannot support a defamation claim because no reasonable person could believe the commercials to be true." Stadler's Reply at 3. In response, Tovey points to the following passage from *Hamilton*:

> We do agree with the concurring opinion's conclusion that "an idea or opinion that conveys a defamatory imputation of fact, even if couched in humor, can be actionable." Op. at 1251. However, "fact" is the key word in that sentence. By finding parody and defamation to be mutually exclusive, we are not suggesting that language cannot be defamatory if it is also humorous. A defendant who couches a defamatory imputation of fact in humor *cannot* simply avoid liability by dressing his wolfish words in humorous sheep's clothing. Instead, parody is another beast that goes beyond mere humor. As the United States Supreme Court stated, parody "could not reasonably be understood as describing actual facts...." *Hustler*, 485 U.S. at 57, 108 S.Ct. 876.

*Hamilton*, 860 N.E.2d at 1245. He also cites to the following statements from Section 155 of the foregoing *American Jurisprudence* publication:

> A defendant cannot escape liability for defamatory factual assertions simply by claiming that the statements were a form of humor or sarcasm; humor and comedy do not enjoy constitutional protection.
>
> Caricature and other forms of humor which ridicule may in certain circumstances convey a defamatory meaning, to be understood in a defamatory sense by those who received it.
>
> The principal factors distinguishing humorous remarks that are defamatory from those that are not are whether the statements were intended to injure as well as amuse and whether they give rise to the impression that they are true.
>
> In determining whether a comedic expression is susceptible of being interpreted as defamatory, a court must examine the challenged statement in light of its content,

its effect on its audience, the context in which the statement was published, the medium by which it was disseminated, and the recipient audience.

50 Am. Jur. 2d Libel and Slander § 155.

First and foremost, Stadler argues that a "reasonable viewer" would not identify Tovey from the commercials. The Court disagrees and finds that Tovey has alleged sufficient evidence to show that Stadler attempted to portray Tovey in the commercials. The actor portrayed an individual named "Pat the Tax Man," Tovey's nickname, and the actor looked strikingly similar to Tovey.[2]

Second, the Court agrees with Tovey that the commercials could convey the following statements of *fact* to the public: (1) Tovey is not a professional full-time tax preparer, (2) Tovey cannot be trusted to prepare tax returns, (3) Tovey cannot be trusted to keep tax returns and refunds secret, (4) Tovey's customers are unprotected in the event the IRS audits their returns, and (5) Tovey is an unlicensed or unqualified tax preparer. Although Stadler attempted to use humor to promote his own business over Tovey's, Stadler cannot, at this point, hide behind the humor as a bar to Tovey's defamation claim. The commercials arguably convey defamatory statements and reasonable viewers could indeed interpret the foregoing statements of fact as true. As such, Tovey's defamation claim will not be dismissed for failure to state a claim under Rule 12(b)(6).

### 2. *Trade Disparagement*

"Section 43(a)(1)(B) of the Lanham Act . . . forbids the use of any 'false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of [the seller's] or

---

[2] Tovey's appearance is unique in that he has shoulder-length blonde hair. *See* Dkt. No. 1-1 at 7. The actor also had shoulder-length blonder hair.

another person's goods . . . .'" *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 503 (7th Cir. 2009) (quoting 15 U.S.C. § 1125(a)(1)(B)). Stadler again argues that, as a matter of law, the commercials are parody and are thus not actionable under the Lanham Act. The Court is not persuaded by Stadler's argument.

Stadler relies on *Eveready Battery Co. v. Adolph Coors Co.*, 765 F. Supp. 440 (N.D. Ill. 1991), a trademark infringement case from the Northern District of Illinois, to support his argument. In that case, Eveready filed suit against Coors after Coors made a commercial that spoofed Eveready's well-known "Energizer Bunny." In denying Eveready's request for an injunction prohibiting Coors from airing the commercial, the court noted as follows:

> Coors' parody defense would likely defeat Eveready's Lanham Act claim in any event. Parody has been recognized as a defense to a trademark infringement action. *See Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ. Group, Inc.*, 886 F.2d 490 (2d Cir.1989); *see also* Note, *Trademark Parody: A Fair Use and First Amendment Analysis*, 72 Va. L. Rev. 1079 (1986) (discussing the use of the parody defense in trademark infringement and dilution cases). Courts in this district as well have recognized parody as a legitimate use of another's mark. *See General Mills, Inc. v. Henry Regnery Co.,* 421 F. Supp. 359 (N.D.Ill.1976) (denying preliminary injunction of defendant's cookbook, entitled "Morey Amsterdam's Betty Cooker Crock Book For Drunks," after finding no likelihood of confusion with plaintiff's registered trademark, "BETTY CROCKER"). In the *Cliffs Notes* case, the Second Circuit discussed the need to balance the necessity of imitation in parody with the trademark owner's rights in his mark.
>
>> Conflict between these two policies is inevitable in the context of parody, because the keystone of parody is imitation. It is hard to imagine, for example, a successful parody of Time magazine that did not reproduce Time's trademarked red border. A parody must convey two simultaneous—and contradictory—messages: that it is the original, but also that it is *not* the original and is instead a parody. To the extent that it does only the former but not the latter, it is not only a poor parody but also vulnerable under trademark law, since the customer will be confused.
>
> *Cliffs Notes*, 886 F.2d at 494. As the court discussed above, although the Coors parody contains similarities to the Eveready mark, it contains conspicuous and resounding differences as well. To the extent that the Coors commercial conveys the message "that it is the original," it

8

emphatically conveys "that it is not the original." Thus, this court construes the Coors commercial as a permissible parody which does not violate the provisions of the Lanham Act.

*Id.* at 450.

In this case, Stadler argues that "there are marked differences that 'emphatically convey' that it is not Plaintiff, nor intended to be [the Plaintiff]" in the commercials. Stadler's Br. at 4. Thus, it argues that the commercials are clearly parody and not actionable under the Lanham Act. The Court disagrees. Even assuming the reasoning in *Eveready* applies to this case, as noted above, Tovey has alleged sufficient evidence to show that Stadler attempted to portray Tovey in the commercials.

Regardless, *Eveready* is not binding on this Court, and it is entirely distinguishable from the present case.[3] Trademark infringement under the Lanham Act is an altogether different claim than the trade disparagement claim alleged in this case. Stadler fails to cite any case law or make any argument that convinces the Court that its attempt at using humor to make (arguably) defamatory statements about Tovey is permissible under the Lanham Act. As such, Tovey's trade disparagement claim will not be dismissed pursuant to Rule 12(b)(6).

The Court thus **DENIES** Stadler's motion to dismiss in its entirety.

---

[3] The Court also finds that *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 254 (3d Cir. 2011) (finding that rum company did not falsely advertise the origin of its "Havana Club" rum) and *Marriott Corp. v. Ramada Inc.*, 826 F. Supp. 726, 728 (S.D.N.Y. 1993) (finding that hotel chain's advertisements were not false or misleading where ads portrayed couples with the same last names as their competitor's hotel chains (e.g., the Marriotts)), cited to in Stadler's reply brief, are nonprecedential and distinguishable from the present case.

### III.    CONCLUSION

For the reasons set forth above, the Plaintiff's motion to amend is **GRANTED**, and the

Defendant's motion to dismiss is **DENIED**.

SO ORDERED:   2/04/15

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.